**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X   Case No.
JASMINE YOUNG,

                Plaintiff,

    - against -                **COMPLAINT**

AMI COLÉ, INC., and DIARRHA N'DIAYE,    PLAINTIFF DEMANDS A
*Individually*,                                        TRIAL BY JURY

                Defendants.
------------------------------------------------------------------X

Plaintiff JASMINE YOUNG, by and through her attorneys, NISAR LAW GROUP, P.C., hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and the New York City Human Rights Law, New York City Administrative Code § 8-107, et. seq. ("NYCHRL") and seeks damages to redress the injuries she has suffered as a result of being discriminated against on the basis of her race (African-American) and national origin (African-American).

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claim brought under city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

1

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a charge of discrimination regarding national origin discrimination with the EEOC.

6. Plaintiff received a Notice of Right to Sue on August 5, 2021.

7. This action is being commenced within 90 days of receipt of said Notice of Right to Sue.

## PARTIES

8. At all times relevant, Plaintiff JASMINE YOUNG ("Plaintiff") was and is a resident of the State of New York and Kings County.

9. At all times relevant, Defendant AMI COLÉ, INC. ("Ami Colé") was a domestic business corporation which lawfully conducted business in the State of New York. Upon information and belief, the corporation became inactive as of April 16, 2021, and as of April 20, 2021, again became active in New York State, this time as a foreign business corporation duly existing pursuant to and by virtue of the laws of the State of Delaware. Nevertheless, at all times relevant, Defendant Ami Colé has maintained a "headquarters" located at 160 East 117th Street, Apt. 3C, New York, NY 10035.

10. At all times relevant, Defendant DIARRHA N'DIAYE ("N'Diaye") was and is an employee of Defendant Ami Colé, holding the positions of founder and "Chief Executive Officer."

11. At all times relevant, Defendant N'Diaye was Plaintiff's supervisor and had supervisory authority over Plaintiff, including the power to hire, fire, and/or directly affect the terms and conditions of Plaintiff's employment, as well as direct her daily work activities.

12. Defendant Ami Colé and Defendant N'Diaye shall be herein referred to together as "Defendants."

**MATERIAL FACTS**

13. Plaintiff's race and national origin are both African-American, in that she is Black and was born and raised in the United States of America.

14. On or about September 28, 2020, Plaintiff began working for Defendants in the position of VP of Operations. She was recruited and hired by Defendant N'diaye. Defendant N'Diaye is first-generation Senegalese-American.

15. At all times relevant, Defendant Ami Colé was and is a beauty brand focusing on cosmetic products for Black and women of color. Notably, when Plaintiff came onboard with the company, the company's focus was to cater to specific clientele—to wit— "melanin-rich" females (i.e., women with black and brown skin).

16. However, within a few months of working for Defendants, Plaintiff began to notice that the focus of the brand began to shift towards rooting the brand specifically in Senegalese heritage, and away from an all-encompassing focus on Black and women of color.

17. Significantly, in or around early November 2020, Defendant N'diaye married a Senegalese man.

18. Around this time, another member of Defendant Ami Colé's leadership named Priscilla Quaye (who started working for Defendant Ami Colé about a week after Plaintiff—to wit—around October 5, 2020) began commanding greater attention from Defendant N'diaye, and specifically, regarding rooting the brand and the brand image to reflect more "African" imagery and less all-encompassing. By way of background, Ms. Quaye is first-generation Ghanian-American, her parents having been born in Ghana (first-generation meaning they were born in America, to foreign-born parents who emigrated to the U.S.).

19. As to this shift towards being more "African" (and specifically, Senegalese), Defendant N'diaye began becoming closer to Ms. Quaye. Plaintiff noticed they had more meetings together in which the excluded Plaintiff (despite Plaintiff also being an executive), discussed having been born in the U.S. and being raised with African values in the U.S., and Defendant N'diaye invited Ms. Quaye to investor meetings (while not inviting Plaintiff). Defendant N'diaye also spoke of her desire to manage the company from both New York and Dakar, Senegal, as she wanted the brand and herself to be considered "bi-continental." Plaintiff began to wonder if she had been of direct or traceable African-descent (as opposed to African-American) whether she would have been treated equal to Ms. Quaye.

20. While this shift in focus was slow at first, it began moving much quicker in early February 2021 when Defendant N'diaye traveled to Senegal. This trip began on or about February 6, 2021.

21. Notably, prior to this trip, Plaintiff met with Defendant N'diaye (on or about January 26, 2021) for a 90-day performance review (conducted orally) during which Defendant N'diaye told Plaintiff she was doing a great job and that she was overall pleased with her work performance.

22. However, during this trip to Dakar, Senegal, Plaintiff (as well as others) joined Defendant N'diaye on Zoom video calls. While on these calls, Defendant N'diaye made it clear that the brand imagery and upcoming campaign messaging was to be more heavily rooted in Senegalese culture and this would be evident via social media and the upcoming launch campaign. In fact, Defendant N'diaye expressed that the brand was going to be more vocal about Senegal, tying the "melanin-rich" to Senegal specifically (with an executive

team that reflects this).

23. Also, while in Senegal, Defendant N'diaye emailed Plaintiff a copy of a written 90-day performance review. When Plaintiff read the written performance review, she was surprised to see that the written review was completely different than the January 26, 2021 oral review. In fact, the written review contained a number of inaccuracies or critiques which were never discussed or touched upon on January 26, 2021. As such, Plaintiff emailed Defendant N'diaye on February 13, 2021 and went point-by-point to politely address each issue raised by her.

24. However, rather than respond to address Plaintiff's email, on February 16, 2021, Defendant N'diaye contacted Plaintiff to inform her that her employment was terminated, effective immediately.

25. When Plaintiff asked why she was being terminated, Defendant N'diaye told her that she (Defendant N'diaye) did not want to get into the details of the termination, but that the company needed to make a pivot and they were going to find someone else for the position. Plaintiff inquired who made the decision and how they came to the conclusion of termination, and Defendnat N'diaye responded that it was not relevant who was consulted to make the termination and again, she did not want to get into the details of the decision-making process as she did not believe it was necessary or helpful.

26. In fact, shortly after Plaintiff's departure, she (Plaintiff) learned that during the period surrounding the decision to terminate her employment, Defendant N'diaye had taken efforts to involve the brand in a GoFundMe initiative to raise money for the #FreeSenegal movement—a political movement that opposes Senegal President Macky Sall.

27. In retrospect, once the brand began shifting away from an all-encompassing black and

brown-skin beauty brand to more of an African focus (with clear Senegalese political and African-descent focuses emerging), Defendant N'diaye had little use for Plaintiff as she was African-American (i.e., black having been born in the U.S.) as opposed to having been born in Africa, or having a similar background of a first-generation Senegalese citizen as Defendant N'diaye. As this focus began to gel, Defendant N'diaye fired Plaintiff. Had Plaintiff been of direct-African descent, or first-generation African (as opposed to African-American), she would not have been fired.

28. Plaintiff feels offended, disturbed, and humiliated by the unlawful and discriminatory termination.

29. As a result of Defendants' discrimination, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

30. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

31. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

32. Plaintiff seeks damages for lost wages, emotional distress, punitive damages, and attorneys' fees.

33. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands damages against both Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER 42 U.S.C. § 1981
(Against both Defendants)**

34. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

35. 42 U.S.C. § 1981 states in relevant part as follows:

    (a) Statement of equal rights

    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    (b) "Make and enforce contracts" defined

    For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

36. Plaintiff was discriminated against on the basis of her race as provided under 42 U.S.C. § 1981 and has suffered damages.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Against Defendant Ami Colé only)

37. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

38. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e, *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendant. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's national origin.

39. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e, *et seq.*, by discriminating against Plaintiff because of her national origin causing her to suffer damages.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against both Defendants)

40. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

41. The New York City Administrative Code § 8-107(1) provides, in relevant part: "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

42. Defendants engaged in unlawful discriminatory practices in violation of the New York City Administrative Code § 8-107(1)(a) by discriminating against Plaintiff because of her race and national origin causing her to suffer damages.

## JURY DEMAND

43. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, Title VII, and the New York City Human Rights Law in that Defendants discriminated against Plaintiff due to her race and national origin.

B. Awarding damages to Plaintiff resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
September 29, 2021

                                        **NISAR LAW GROUP, P.C.**

By: _____
Casey Wolnowski, Esq.
*Attorneys for Plaintiff*
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Ph: (646) 889-1007
Email: cwolnowski@nisarlaw.com

9